Dear Commissioner Brown:
You requested the opinion of this office concerning the ability of the Louisiana Life and Health Insurance Guaranty Association ("LLHIGA" or the "Association") to grant a security interest in its accounts, receivables, contract rights and general intangibles.
You advised that Article 4, Section 1 of the Plan of Operation of LLHIGA provides for the funding of the operations of the Association and provides in pertinent part as follows:
I. Loans and Collateral and Security
 The Board of Directors may at any time and from time-to-time authorize a line of credit loan or loans to the Association from one or more banks or financial institutions in an aggregate principal sum not at any time exceeding $15,000,000.00, upon such terms and conditions and bearing such interest rate or rates and fees as may be authorized by the Board of Directors. The line of credit loan or loans may be collateralized and secured by a security interest or interests in favor of the lender or lenders applicable to all of the existing and subsequently acquired accounts, receivables, contract rights and general intangibles of the Association. Any loan agreement or agreements evidencing such loan or loans may include such agreements, terms, representations, covenants, warranties and conditions as may be authorized by the Board of Directors.
You advised that the Association has obtained a commitment for a $15 million line of credit loan to be provided by a consortium of Louisiana banks. The commitment requires that the line of credit loan be secured by a first ranking and continuing security interest and assignment applicable to all accounts, receivables, contract rights and general intangibles of the Association. Your question is whether LLHIGA is authorized to grant such a security interest?
LLHIGA was created pursuant to La. R.S. 22:1395.1, et seq. (the "LLHIGA Act") as an association of insurers to protect designated persons against the failure of contractual obligations under life and health insurance policies and annuity contracts because of the impairment or insolvency of the member insurer that issued the policies or contracts. La. R.S.22:1395.2. LLHIGA was created as a nonprofit entity, under the immediate supervision of the commissioner of insurance. La. R.S. 22:1395.5(B). La. R.S. 22:1395.5(C)(1) provides:
 (1) The association is not and may not be deemed a department, unit, agency, instrumentality, commission, or board of the state for any purpose. All debts, claims, obligations, and liabilities of the association, whenever incurred, shall be the debts, claims, obligations, and liabilities of the association only and not of the state, its agencies, instrumentalities, officers, or employees. The state may not budget for or provide general fund appropriations to the association, and the debts, claims, obligations, and liabilities of the association may not be considered to be a debt of the state or a pledge of its credit. (Emphasis added)
Notwithstanding the foregoing, the association is subject to the provisions of R.S. 44:1 et seq. and R.S. 42:4.1 et seq., and may be considered as if it were a public body for those purposes. La. R.S. 22:1395.5(C)(2).
The board of directors of the Association is selected by the member insurers subject to the approval of the commissioner of insurance from certain specified groups. La. R.S. 22:1395.6(A).
La. R.S. 22:1395.7(A) grants the Association the right to guarantee, assume, or reinsure any or all of the policies or contracts of the impaired insurer and to provide such monies, pledges, notes, guarantees, or other means as are proper to assure payment of the contractual obligations of the impaired insurer.
La. R.S. 22:1395.7(N)(1), (3) and (6) allow the Association to: (a) enter into such contracts as are necessary or proper to implement the provisions and purposes of the LLHIGA Act; (b) borrow money to effect the purposes of the LLHIGA Act; and (c) exercise, for the purposes of the LLHIGA Act and to the extent approved by the commissioner, the powers of a domestic life or health insurer.
For the purpose of providing the funds necessary to carry out the powers and duties of the Association, the board of LLHIGA is authorized to assess its members. There are two types of assessments authorized in La. R.S. 22:1395.8: Class A and Class B. Class A assessments may not exceed $150 per member insurer in any one calendar year and are for the purpose of meeting administrative and legal costs and other expenses and examinations of LLHIGA. [La. R.S. 22:1395.8(B)(1) and (C)(1)] Class B assessments are assessed against member insurers to meet the policy and contractual obligations of insurers who become insolvent or impaired. La. R.S. 22:1395.8(B)(2). Class B assessments are pro rated among the Association members and cannot in any one calendar year exceed two percent of the "average premiums received of the insurers in this state on the policies and contracts covered by the account during the three calendar years preceding the year in which the insurer became an impaired or insolvent insurer". [La. R.S. 22:1395.8(C)(2) and (E)].
Secured transactions of non-public entities are governed by La. R.S. 10:9-101, et seq. La. R.S. 9:104 states in pertinent part as follows:
"The provisions of this Chapter do not apply:
 (e) to a pledge or assignment of taxes, or revenues, including, but not limited to, water, gas, garbage, electricity or sewer charges, by public entities, or any security interest created or granted by public entities, in connection with the issuance of securities pursuant to the provisions of the constitution or statutes of this state. "Securities" as used in this subsection shall have the meaning as set forth in R.S. 39:1421(1). "Public entities" as used in this subsection shall have the meaning set forth in R.S. 39:1421(2);" (Emphasis added)
La. R.S. 39:1421(2) defines "public entities" to mean "(a) state boards, agencies or commissions, parishes, municipalities, parish and municipal school boards and districts, levee boards and districts, port boards and commissions, port, harbor, terminal and industrial districts, drainage and land reclamation districts, all special service districts including, but not limited to, road, water, sewerage, fire protection, recreation, hospital service, gas utility and garbage districts; (b) all other political subdivisions, special authorities, commissions and boards heretofore or hereafter created by or pursuant to the constitution or statutes of the state, any laws incorporated into or ratified or confirmed by the constitution, or general or special charters of any parish or municipality; and (c) all other units of local government created by or governed by the governing authorities of parishes or municipalities."
Based upon the provisions of Title 22 pertaining to LLHIGA cited above, specifically La. R.S. 22:1395.5(C)(1), it does not appear that LLHIGA is a "public entity" for purposes of La. R.S.39:1421(2) and thus would not be prohibited from granting a security interest under the provisions of La. R.S. 10:9-101, et seq.
This office has also been requested to opine on whether the borrowing by LLHIGA is subject to the new state debt limitation contained in Act No. 813 and Act No. 1044 of the 1993 Regular Session.
Act 1044 is the amendment to Article VII, Section 6(F) of the Louisiana Constitution which was approved by the voters at the October 16, 1993 election. Act 1044 mandates the legislature to determine a limit on the amount of net state tax supported debt which may be issued each year and requires that the amount of debt service the state pays shall not exceed a percentage of the estimate of the money to be received by the state general fund and dedicated funds in the official forecast adopted by the Revenue Estimating Conference.
Act 813 is the legislative determination on the limit of net state tax supported debt and Act 813 became effective July 1, 1993. Act 813 sets a limitation on the issuance of net state tax supported debt and prohibits the issuance of such debt if the amount to be expended for principal, interest and sinking fund requirements on such debt exceeds a specified percentage of the estimate of money to be received by the state general fund and dedicated funds for each respective fiscal year as contained in the official forecast adopted by the Revenue Estimating Conference at its first meeting of each fiscal year. The percentage, beginning with 13.1% for fiscal year 1993-94, is reduced each year until fiscal year 2003-2004, when the percentage is set at 6.0%.
The limitation may be changed or exceeded for a particular project or related projects upon passage of a specific legislative instrument by a two-thirds vote of the elected members of each house of the legislature. [La. R.S. 39:1367(B)] The State Bond Commission is prohibited from approving the issuance of any net state tax supported debt, the debt service requirement of which would cause the limit to be exceeded. [La. R.S. 39:1367(B)].
Paragraph E of Act 813 defines "net state tax supported debt" as follows in pertinent part:
 "(2) `Net state tax supported debt' means all of the following debt obligations issued by the state or any entity in the state for which the state is legally obligated to make debt service payments, either directly or indirectly:
* * *
 (c) Debt secured by statewide tax revenues or statewide special assessments."
Clearly, the borrowing by LLHIGA would be a debt obligation issued by an entity in the state. The questions then remain: (i) is this a debt obligation for which the state is legally obligated to make debt service payments, either directly or indirectly? and (ii) if the answer to the first question is yes, is the debt obligation secured by statewide tax revenues or statewide special assessments?
The undersigned was advised that the primary security for LLHIGA's borrowing would be the Class B assessment made pursuant to La. R.S. 22:1395.8. The other security for the borrowing would be the assets of the impaired insurers, the state is not liable directly for the payment of the debt service on such borrowing and under the specific provisions of La. R.S.22:1395.5(C)(1), quoted above, any debt of LLHIGA may not be considered a debt of the state or a pledge of the state's credit. It likewise does not appear that the state is indirectly liable for the payment of debt service on the Bonds. While the member insurers receive a credit from the state for the assessment paid to LIGA, such does not constitute a payment of debt service.
Based upon the foregoing, it is the opinion of this office that the Bonds would not be included in the definition of "net state tax supported debt" for purposes of Act 813.
This opinion does not address whether State Bond Commission approval is required for this borrowing. The undersigned has been advised that counsel to LLHIGA will furnish an opinion on that subject to LLHIGA.
Trusting this adequately responds to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS Assistant Attorney General
RPI/MSH/jav